## CHARLES I. SMITH, ADMR. OF ISAAC M. SMITH'S ESTATE,

### v.

## ROBERT BLAIR, SECOND, APT.

MAY TERM, 1895.

*Tax collector. Administrator may prosecute suit begun by. Quadrennial appraisal. Failure to file copy.*

1.  The administrator of a tax collector may enter and prosecute to final judgment a suit begun by such collector in his lifetime for the collection of a tax by trustee process under R. L., ss. 407 and 408.

2.  As the law stood in 1886, the neglect of the listers to file in the town clerk's office on or before September 15 a copy of the quadrennial appraisal, as required by R. L., s. 308, did not vitiate subsequent grand lists based upon that appraisal.

Suit for the collection of taxes. Heard upon the report of a referee at the December term, 1894, Caledonia county, MUNSON, J., presiding. Judgment for the plaintiff. The defendant excepts.

*C. H. Hosford* for the defendant.

The statute provides a method in case of the decease of a tax collector, and that method is exclusive. R. L., ss. 428-431; *Johnson* v. *Howard*, 41 Vt. 122; *Camden* v. *Allen,* 26 N. J. L. 398; *Crapo* v. *Sletson*, 8 Met. 394.

*W. P. Stafford* for the plaintiff.

The administrator is a proper party,    The suit was that of the collector, and survived under the statute applicable to actions in assumpsit.   R. L., s. 407 ; *Wheeler* v. *Wilson*, 57 Vt. 157 ; R. L., 2133, 2135, 2143.

The requirement that the listers shall file a copy of the quadrennial appraisal is directory merely, and a failure to comply with it does not vitiate the grand list.   *Willard* v. *Pike*, 59 Vt. 202.

THOMPSON, J.   I.   During the years 1890 and 1891, the defendant was a resident taxpayer of the town of Barnet, and neglected and refused to pay the taxes assessed against him in that town.   He did not have known personal property in this state sufficient to pay such taxes.

The plaintiff's intestate, Isaac M. Smith, was the duly elected and qualified constable and collector of Barnet for both of those years.   Under the provisions of R. L., ss. 407 and 408, he, in his lifetime, commenced a trustee suit in his own name against the defendant to collect these taxes. While it was pending, he died, and his administrator entered to prosecute.   The chief contention now is over the question whether the suit can be prosecuted to final judgment by the administrator.   The defendant insists that R. L., ss. 428, 429, 430, designate the only remedy for the collection of a tax in the hands of a collector at the time of his death, and that consequently the right to maintain this action was terminated by the death of the plaintiff's intestate.   These sections, in substance, provide that when a collector dies while a tax bill committed to him is uncollected, in whole or in part, his executor or administrator shall, on demand, lodge with the clerk of the town, village or other community, such tax bill and the moneys collected and not paid over as required by law, and that an executor or administrator who neglects this duty shall be liable to the town, village or other com-

munity, for the whole amount of the tax bill, and shall have no authority to collect or receive such unpaid taxes ; and that the successor of the deceased tax collector shall receive from the clerk the tax bill and money, if any, and shall complete the collection of the taxes as though the tax bill had been originally committed to him. These sections, as well as R. L., ss. 407, 408, are a part of R. L., Ch. 26, entitled, "Collection of Taxes," and are to be construed, together with the rest of that chapter, so as to give effect to all its provisions, if it can be fairly done. R. L., ss. 428-430, are intended to provide a speedy and effective way by which the town, village or other community, may recover possession of its tax bills in case of the death of its collector, but it was not intended by their provisions to deprive such collector or his representative of any rights specifically conferred upon the collector by R. L., Ch. 26. When the delinquent taxpayer has not known personal property in the state sufficient to pay the tax against him, R. L., ss. 407, 408, give the collector the right to commence, in his own name, a trustee suit upon such tax against such delinquent. When the conditions exist authorizing the collection of a tax in this way, a cause of action accrues to the collector, individually, by force of the statute. He sues in his own name, as an individual, and not in his official capacity as collector. He may join counts for causes of action accruing to him against the defendant for matters other than the taxes. The action must be assumpsit. *Wheeler* v. *Wilson*, 57 Vt. 157. It is the collector's duty to resort to all lawful means to collect the taxes committed to him. If he proceeds by trustee suit and recovers judgment against the taxpayer, he recovers his fees and legal costs. If judgment is rendered for the defendant in such a suit by reason of the illegality of the tax, the collector, by virtue of R. L., s. 450, is entitled to be indemnified by the town, village or other community, by which he is appointed, for the damage which he suffers by

the illegality of such tax.    If the  action is defeated by the
death of the collector, not only  his  own  costs,  but  those of
the defendant, are cast upon his estate, for  the  town  is  not
bound to indemnify him or his estate if the taxes  are  legal,
but only in case they are illegal, and  for  that  reason judg-
ment is rendered against the collector.    The validity of the
taxes can only be  determined  by  final  judgment.    We do
not think it was the purpose of  the  statute  to  impose  upon
the collector the duty of  collecting the taxes by trustee suit,
if necessary, and at the same time mulct his  estate  with all
the costs of the suit in the event he  should  die  before  final
judgment.    The legislature never  contemplated  so  absurd
and unjust a result.    R. L., s. 407, expressly provides that
after the commencement of such suit, " the same proceedings
shall be thereupon had and the trustee  shall  be  chargeable
as in other trustee suits," except that  the  suit may be main-
tained although the tax is less than  ten dollars and the trus-
tee has less than ten dollars in  his  hands.    In  *Wheeler* v.
*Wilson*, 57 Vt. 157, this court held  that the statute, by pre-
scribing the trustee process, impliedly prescribed that the
form of the action should be assumpsit.    It is equally clear
that by prescribing that the same proceedings should be had
as in other trustee suits, it  impliedly  declared that in the
case of the death of the plaintiff, the  suit  might  be  prose-
cuted to final judgment by his administrator.  This intention
is still more  clear, in  view  of  the  fact already  suggested,
that the action is given to the collector  in his own name, in-
dividually, and not in his official capacity as collector.    We
therefore hold that when a collector  has  commenced a trus-
tee suit to collect a tax, under  s.  407,  and  dies  during  its
pendency, his administrator may  enter  and  prosecute  it  to
final judgment, although the tax  bill  after  his  death  may
have passed into the hands of  his  successor.    In  this  way
the legality or illegality of the tax  can  be  determined, and
the right of the deceased collector  to  his costs or indemnity

be preserved. The taxpayer suffers no legal or moral injury by this construction of the statute. If the tax is adjudged to be illegal, he prevails and recovers his costs; if adjudged to be legal, he is made to perform his legal and moral duty as citizen.

II. No copy of the list of the quadrennial appraisal of real estate for 1886 was filed in the town clerk's office in September of that year, as required by R. L., s. 308. The defendant claims that this omission invalidates the annual lists for 1890 and 1891, and that the taxes assessed thereon are illegal. No question is made but that the quadrennial list was properly signed, sworn to and returned to the town clerk's office on before the first Tuesday of July of that year, as required by law. The list thus filed was the appraisal from which the taxpayer could appeal within three days from the first Tuesday of July, to the civil board, if he was dissatisfied with the appraisal of the listers. If no appeals were taken, the list filed would be the completed list. If appeals were taken, and sustained, the list filed by the listers would then and there be corrected, and thus corrected would be the quadrennial appraisal. It does not appear that any appeals were taken from the action of the listers.

St. 1882, No. 1, s. 41, repealed ss. 299 to 307, inclusive, of R. L., and thus abolished county equalizing conventions and the state equalizing board, and the provision that the listers should meet on or before the third Tuesday of July and revise such list and elect one of their number a member of the county equalizing convention. By St. 1882, No. 1, s. 33, R. L. 308 was amended by striking out the words, "by state equalizing board." As amended, this section reads as follows :

"Sec. 308. On or before the fifteenth day of September, in the year of the appraisal, the listers in each town shall make out, in blank books to be provided by the secretary of state, and deposit in the town clerk's office, for the use of

their successors in office, a fair copy of the the list of real estate in such town, embracing the following particulars :

"I.   The name of each person assessed for real estate in such town.

"II.   The real estate assessed to such person, specifying each parcel thereof, the class to which it belongs, the valuation of each parcel as finally established, and the village, school and fire district in which each parcel is situated."

It will be observed that the listers are only to make a copy of the list which has already been completed, and that such copy is for the use of their successors in office, and not for the benefit of the individual taxpayers.   There are to be no deductions nor additions, as was often the case before the county equalization convention and state equalization board were abolished.   We think as the law stood in 1886, the failure of the listers to file such a copy on or before the fifteenth day of September did not invalidate the quadrennial appraisal of that year.

This disposes of all the questions urged by the defendant in argument.

*Judgment affirmed.*